IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-cv-00186-BO-KS

|  |  |  |
|---|---|---|
| ELENA VANZ *and* ALEX NUNES, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | ORDER |
| SIMEON RAMSDEN, KIPLING VENTURES HOLDING CO LLC, *and* KIPLING RESERVE LLC, Defendants. | ) ) ) ) ) ) | |

This matter is before the Court on Defendants' motion to strike Plaintiffs' declarations [DE 55] and motion for summary judgment [DE 43]. A hearing was held on these motions before the undersigned on February 25, 2025, in Elizabeth City, North Carolina. For the following reasons, both motions are granted.

## BACKGROUND

Plaintiffs Elena Vanz and Alex Nunes are professionals whose line of business concerns architecture and interior design [DE 49 at 2]. Prior to the facts of this case, both Plaintiffs had a longstanding business relationship with a man named Kyle Corkum, who is not part of this suit in any capacity. *Id.*

In 2020, Corkum contacted Vanz and Nunes about a real estate development venture in North Carolina. *Id.* at 6. Corkum discussed pay with Vanz and Nunes, and they both understood that their salaries would be $150,000 a year. *Id.* at 7. Later, Plaintiffs learned that the payment of this salary was conditional on the real estate venture turning a profit. *Id.*

Plaintiffs relocated from Massachusetts to North Carolina, and proceeded to begin work on the real estate venture. *Id.* at 8. They did not have office space, and instead met at Corkum's

house or apartment meeting spaces. *Id.* After Plaintiffs had moved to North Carolina, Corkum entered into a business relationship with Defendant Ramsden. *Id.* at 10. The associated business entity Defendants—Kipling Ventures Holding Company LLC and Kipling Reserve LLC—were subsequently created. *Id.* at 11.

While working on the real estate venture, Vanz and Nunes received their projects primarily from Corkum. *Id.* at 14. They were given deadlines for these projects, some of which required immediate turnaround, but were not told in which hours to complete the work. *Id.* at 11–12. The Plaintiffs were not paid for their work as initially promised—indeed, they were not paid for nearly two years, yet continued to work on the real estate venture. *Id.* at 9. During this period, Corkum provided Vanz and Nunes with health insurance from one of his related companies. *Id.* at 8.

In 2022, the real estate venture sold its first and only property—The Reserve at Lake Keowee, located in Pickens County, South Carolina. Vanz and Nunes were paid $75,000 each from this sale. *Id.* at 16. Shortly thereafter, due to increasing tension between Corkum and Ramsden, the real estate venture collapsed, and Plaintiffs found themselves out of work. *Id.*

Plaintiffs then brought suit under the North Carolina Wage and Hour Act, alleging that they were employees of Defendant Ramsden and seeking the unpaid portion of their promised $150,000 salaries [DE 1-1 at 11]. Plaintiff further alleged breach of contract and a breach of the duty of good faith and fair dealing [DE 1-1 at 12].

## ANALYSIS

### I. Motion to Strike Declarations [DE 55]

On April 29, 2024, the Defendants moved for summary judgment. Along with their response, the Plaintiffs submitted new declarations setting out the facts behind this case. The

Defendants have now moved to strike those declarations under Federal Rule of Civil Procedure 56(c)(4) [DE 56 at 1].

Declarations are useful tools by which a party can present its version of events to the Court. However, a plaintiff cannot submit new declarations contravening prior testimony in an effort to survive summary judgment. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Rohrbough v. Wyeth Lab'ys, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). Still, in order to disregard a declaration, there must be a "bona fide inconsistency between the declaration and the prior deposition testimony." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 20010). "No such inconsistency exists when the affidavit merely details and lends context to the prior testimony." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 314 n.6 (4th Cir. 2013).

Here, the new declarations submitted by the Plaintiffs contradict prior sworn deposition testimony in numerous ways. For example, while the depositions indicate that the Plaintiffs were generally able to set their own work schedules [DE 47-6 at 17, DE 47-8 at 31–32], the declarations state that they "had no control over [their] own schedule[s]," [DE 50-3 at 4, DE 50-4 at 4]. Similarly, while the depositions show that neither Vanz nor Nunes knew the ownership structure of Kipling Ventures [DE 47-6 at 41–43, DE 47-8 at 66–67], the declarations unequivocally state that they both believed Corkum and Ramsden to be the owners of the company, [DE 50-4 at 1–2, DE 50-3 at 2].

3

These changes indicate that the declarations represent an attempt to correct unfavorable deposition testimony or to introduce new issues of material fact, and the Defendants are entitled to having the declarations struck. However, the appropriate remedy is not to strike the declarations in their entirety, but rather for the Court to disregard those portions of the declarations inconsistent with prior deposition testimony. *Wall Recycling, LLC v. 3TEK Glob., LLC*, 588 F. Supp. 3d 647, 658 n.10 (M.D.N.C. 2022). Accordingly, the motion to strike declarations is granted in part. The portions of the declarations inconsistent with Plaintiff's prior deposition testimony will not be considered in evaluating the motion for summary judgment below.

## II. Motion for Summary Judgment [DE 43]

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative

or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

### A. North Carolina Wage and Hour Act Claims

Defendants have moved for summary judgment on the Wage and Hour Act claims by contending that Plaintiffs Vanz and Nunes were not employees within the meaning of the statute. The Court agrees.

"The North Carolina Wage and Hour Act is modeled after the Fair Labor Standards Act," *Hyman v. Efficiency, Inc.*, 605 S.E.2d 254, 257 (N.C. App. 2004), and for that reason "[i]n interpreting the NCWHA, North Carolina courts look to the FLSA for guidance," *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 707 (E.D.N.C. 2009). Under the FLSA, a plaintiff bears the burden of establishing that he or she was an "employee." *Powell v. P2Enterprises, LLC*, 786 S.E.2d 798, 800 (N.C. App. 2016). Determining the existence of an employer / employee relationship turns on "the degree of control and direction one has over the daily work of an individual. The right to control, not necessarily the actual existence of control, is important." *Id.* at 801.

The test applied by courts is one of "economic reality," examining the "totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Garcia*, 644 F. Supp. 2d at 720. Factors commonly relied on by North Carolina courts in determining the existence of an employer / employee relationship include whether the purported employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.*

The Defendants contend that they are entitled to summary judgment because there is no genuine issue of material fact, and that no reasonable jury would find Plaintiffs' evidence adequate to conclude that an employer / employee relationship existed between Plaintiffs and Defendants. In support of this position, they point to the agreed upon facts between the parties—that the Plaintiffs discussed their salary with Corkum alone [DE 49 at 7], that no written contract of employment existed between the Plaintiffs, Corkum, or Defendants [*id*], that the Plaintiffs were generally free to set their own hours so long as deadlines were being met [*id.* at 11–12], that the Plaintiffs received their assignments primarily from Corkum [*id.* at 14], that they did not discuss delinquent payments with Defendant Ramsden at any time [*id.* at 9], that they received benefits like health insurance through one of Corkum's other companies [*id.* at 8], that they sent invoices for other work to Ramsden's companies [*id.* at 13], and that they were issued neither W-2 [*id.* at 16] nor 1099 [*id.* at 35] tax forms.

Most critical, however, is the fact that Plaintiffs continued to participate in the real estate venture for two entire years without receiving their promised salary—no reasonable jury could find that an employer / employee relationship existed if the alleged employer declined to pay the employees for such a length of time. *Id.* at 9. In determining if a worker is an employee or an independent contractor, "[t]he focal point is whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself.'" *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). Going for two years without pay is a strong indicator that Plaintiffs were not economically dependent on the business to which they rendered service. It is a strange picture that the Plaintiff paints, but it is undeniably one that positions them as contractors or partners in a joint venture rather than as Ramsden's direct

6

employees. If an employment relationship existed with anyone, it would be Corkum—who, again, is not a named party in this suit.

Plaintiffs, in response, argue that Ramsden provided them with tools and computer programs [DE 49 at 35], and that they all shared email addresses on a common server and were often referred to as a "team," [*id.* at 29]. Further, Plaintiff contends a reasonable jury could find that Ramsden ratified the employment agreements previously made with Corkum because Ramsden and Corkum were in a general partnership [DE 48 at 11]. This is the first time that the issue of a general partnership has been raised, and responses to motions for summary judgment are generally inappropriate places to make such arguments. *Yelverton v. Edmundson*, 2016 WL 7665543, at *5 (E.D.N.C. 2016). Regardless, the facts cited to by Plaintiffs cannot support a conclusion that an employment relationship existed between Plaintiffs and Defendants, or that a general partnership existed between Ramsden and Corkum.

"[T]he facts and circumstances must justify the inference of a partnership," while "[c]o-ownership and sharing of any actual profits are indispensable requisites for a partnership." *Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 588 (M.D.N.C. 2004). Here, Plaintiffs fail to point to any evidence showing that Ramsden and Corkum shared a partnership bank account, filed partnership tax returns, obtained a state license, or that there were capital contributions from both parties. While Ramsden and Corkum owned separate LLCs that may have shared resources in the form of email addresses and cloud storage accounts, such digital infrastructure is insufficient for any reasonable person to conclude that a broader partnership existed [DE 48 at 4].

For these reasons, Plaintiff has produced no evidence suggesting that an employer / employee relationship existed between Plaintiffs and any of the Defendants. As such, the

Plaintiffs are not protected by the North Carolina Wage and Hour Act and the Defendants are entitled to summary judgment.

*B. Breach of Contract Claims*

Defendants have moved for summary judgment on the breach of contract and breach of the covenant of good faith and fair dealing claims by contending that no contract existed between the parties, and that therefore there could have been no breach. The Court agrees.

Under North Carolina law, a claim for breach of contract must establish "(1) the existence of a valid contract and (2) a breach of the terms of that contract." *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 797 (E.D.N.C. 2019). "A contract is formed only when the parties involved mutually assent to the same agreement; where one party simply believes that a contract exists, but there is no meeting of the minds, the individual seeking to enforce the obligation upon an express or implied-in-fact theory is without a remedy." *Elliott v. Duke University, Inc.*, 311 S.E.2d 632, 636 (N.C. App. 1984).

Here, Defendants persuasively argue that there is no genuine issue of material fact as to whether a contract existed between the Plaintiff and Defendants—one did not. The Plaintiffs never discussed or negotiated the terms of their alleged contracts with Ramsden, nor is there any evidence suggesting that Ramsden promised Plaintiffs compensation for their work [DE 49 at 9]. Emails and spreadsheets exchanged around the time of selling The Reserve support this, as the amount to be paid to Vanz and Nunes was still unsettled [DE 49 at 15].

The Plaintiffs suggest that a reasonable jury could find that a contract existed between Plaintiffs and Corkum which was then ratified by Ramsden, but those arguments are unavailing for reasons discussed *supra*.

There very well may have been a meeting of the minds between Plaintiffs and Corkum—the Court cannot say. But it is apparent that there was no such meeting between Plaintiffs and Defendant Ramden or either of the Defendant Kipling companies. No genuine issue of material fact exists, and no reasonable jury could find that a contract existed between Plaintiffs and Defendants. Because there was no contract, it follows that there could be no subsequent breach of contract or breach of the covenant of good faith and fair dealing. Accordingly, summary judgment on both claims is proper.

## CONCLUSION

For the foregoing reasons, the motion to strike Plaintiffs' declarations [DE 55] is GRANTED IN PART. The Plaintiffs' evidence cannot a support a conclusion that they acted as employees or that a contract existed between the Plaintiffs and Defendants, and, accordingly, Defendants' motion for summary judgment [DE 43] is GRANTED. Summary judgment in favor of Defendants is entered as to all counts.

SO ORDERED, this _17_ day of March 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE